IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

REAL PROPERTY LOCATED AT 19107 SANDY SLOTH TRAIL, CYPRESS, TX 77433,

    Defendant.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***
_____

The United States of America ("United States"), by and through United States Attorney Peter McNeilly and Assistant United States Attorney Zachary Phillips, pursuant to Supplemental Rule for Admiralty, Maritime and Asset Forfeiture Actions G(2), states:

## JURISDICTION AND VENUE

1. The United States has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C) and (b), seeking forfeiture of defendant assets based upon violations of 18 U.S.C. §§ 1343 (Wire Fraud) and 1957 (Money Laundering). This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper under 28 U.S.C. § 1395 because some of the acts described herein occurred in the District of Colorado.

## DEFENDANT PROPERTY

3. The defendant property, 19107 Sandy Sloth Trail, Cypress, Texas, is more fully described as:

Lot 13, in Block 1, of Bridgeland Parkland Village Sec 23, a subdivision in

Harris County, Texas, according to the map or plat thereof, recorded in Film Code No. 688142, Map and Plat Records, Harris County, Texas.

4. The defendant property was purchased by Emily K. Merrill (Merrill) for $485,999.10 on April 16, 2020. The lender is Cardinal Financial Company, Limited Partnership located in Charlotte, NC. As of May 6, 2025, Merrill has failed to pay the monthly installments that are due. The aggregate past due amount is $12,146.94 ($11,607.84 and $324.10 in accrued late penalties and a $215.00 notice fee as of May 6, 2025).

## **FACTUAL BASIS FOR FORFEITURE**

5. Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

### **Background of Investigation**

6. Orbit Fab, Inc. ("Orbit Fab") is an aerospace company founded in 2018 which develops in-space refueling systems. Orbit Fab's ambitions include building an in-space propellant supply chain: Gas Stations in Space™. The company raised $3 million in 2019 and $28.5 million in a Series A funding in April 2023.

7. In or around July 16, 2021, Merrill was hired by Orbit Fab as the Accounting Manager. Merrill reported to the Chief Financial Officer ("CFO") C.Y. Merrill's accounting duties at Orbit Fab included paying invoices, being in control of accounts payable and maintaining accounting records. Merrill was the bookkeeper, which included all of the financial records.

8. During her employment at Orbit Fab, Merrill engaged in a fraudulent scheme whereby she directed approximately $1,961,949.53 in company funds to two separate accounts without authority to do so. The funds were directed to a USAA Bank account ending in #3963 in the name of Emily and Kenneth Merrill ("USAA #3963") and a Frost Bank account ending in #2338 ("Frost #2338") in the name of Shu Chih Merrill, Merrill's mother-in-law. Merrill furthered her scheme through covering up the nature of the transactions on Orbit Fab bank statements, passing them off as payments to known Orbit Fab vendors. Also acting without authority, Merrill secured a loan for Orbit Fab through submitting fabricated documents reflecting forged signatures of company employees to the lender, to include the CFO of Orbit Fab.

9. When Merrill was hired, Orbit Fab had approximately eleven employees. Merrill was the only employee working remotely. Merrill traveled to Colorado every quarter or so to meet with the employees of Orbit Fab.

10. In or around February 2022 the CFO left her employment at Orbit Fab. A replacement CFO was not hired until S.H. was hired as Chief Operating Officer ("COO") in June 2023. Merrill began reporting to S.H. at that time. Between February 2022 and June 2023, Orbit Fab had minimal oversight of Merrill's accounting duties.

11. On November 1, 2024, Merrill was informed that her position with Orbit Fab was being off-boarded and she had two weeks left of employment. Approximately five days later, suspicious transactions were identified by Orbit Fab and Merrill was fired.

### The Manner To Defraud

12. On October 3, 2024, Orbit Fab secured a bridge loan in the amount of $300,000.00 from Breakout Capital. The bridge loan was interest free if it was paid within

the first thirty days of funding. If a full payoff was not received, then the first regular payment would be due after the thirty-day period expired, which was November 5, 2024.

13. On or around October 16, 2024, Orbit Fab's COO S.H. directed Merrill to repay the loan in full. Merrill then requested Breakout Capital's payoff information by email on October 16, 2024. On November 4, 2024, Breakout Capital emailed S.H., copying Merrill, to check on the status of the payoff as they never received the payment, and the first payment would be due the next day. On November 4, 2024, Merrill replied to Breakout Capital stating that she was "working on confirmation" after Breakout Capital requested the routing and account numbers used when the funds were sent. Breakout Capital never received a confirmation that the money was wired.

14. On or around November 1, 2024, Orbit Fab attempted to secure a new loan from Breakout Capital. Breakout Capital requested Orbit Fab's JPMorgan Chase Bank ("JPMC") account statement for September 2024 as part of their underwriting process to fund the new loan. Merrill provided a pdf copy of what she represented to be the JPMC September 2024 statement. Breakout Capital scanned the September 2024 statement through a fraud detection tool and the statement was flagged with a high anomaly score indicative of fraud. An employee from Breakout Capital asked S.H. for clarification about the statement. S.H. then downloaded the September 2024 JPMC statement directly from the bank's website and compared it to the statement that Merrill had provided. S.H. could clearly see that the statement Merrill sent had been changed from the true JPMC statement.

15. In particular, an entry on September 27, 2024, had been doctored. The true downloaded bank statement displayed a transaction with Specialty Capital, while the

fraudulent statement provided by Merrill displayed known Orbit Fab vendor (McMaster-Carr). S.H. called Specialty Capital and was told by the Underwriting Manager that the Underwriting Manager had been working with Merrill to secure a high interest loan on behalf of Orbit Fab in the amount of $287,251.00. S.H. confirmed that no one at Orbit Fab knew about this loan besides Merrill. S.H. also confirmed that it is believed Merrill forged the signature of Orbit Fab's Chief Executive Officer ("CEO") throughout the loan document submitted to Specialty Capital, which included a personal guarantee from the CEO of the obligations for the agreement. Also included with the loan documents was a fraudulently created resolution of the Board of Directors of Orbit Fab authorizing Merrill to, "make any decisions to obtain any loan or credit in the business's name." It is believed Merrill again forged the CEO's signature. On the date of the resolution document, Orbit Fab had a practice which required that three members of the board would have needed to sign the document in order for it to be valid.

16. The discovery of the false documents led Orbit Fab to conduct a review of the company's JPMC statements dating back to the opening of the account in March of 2023. Orbit Fab discovered nineteen entries where a vendor of Orbit Fab was listed as the payee on the bank statement, but the bank account funds were actually paid to the USAA #3963 account. For instance, the repayment of the $300,000.00 to Breakout Capital, was supposed to have occurred on October 16, 2024. The bank statements reflected the payee as Breakout Capital; however, the payment was actually sent to Merrill's USAA #3963 account.

17. The initial internal Orbit Fab review found that at least $1.4 million in company funds were diverted to Merrill's USAA #3963 account or the Frost #2338 account.

18. S.H. later contacted Orbit Fab's vendors and was informed that some of them had not been paid for services for over a year, and found evidence that Merrill utilized Orbit Fab's accounts payable email to apparently attempt to keep the vendors from complaining. Merrill would claim to vendors that Orbit Fab had paid certain invoices but would falsely explain that the system must have bounced the payment back to Orbit Fab.

19. When an internal review was made on the Orbit Fab's corporate credit card ("DIVVY"), Orbit Fab determined that Merrill had made numerous personal charges which were not authorized by the company. In addition, Orbit Fab determined that Merrill attempted to utilize the corporate card a week after she was fired for a hotel charge in Hawaii; however, the charge was denied. Orbit Fab believes that approximately $215,800 of Merrill's charges on the corporate card were for her personal expenses and not authorized by Orbit Fab.

20. The initial review of the bank statements of Orbit Fab's two main bank accounts, JPMC and Silicon Valley Bank, reflected that the first suspicious transaction attributable to Merrill was initiated at the Silicon Valley Bank account on February 3, 2022. The suspicious transaction was a payment to Capital Management Automated Clearing House (ACH), a mortgage processing company for Emily Merrill's residence, the defendant property, 19107 Sandy Sloth Trail, Cypress, Texas in the amount of $18,515.81. The mortgage processing company for Merrill's residence then changed from

Capital Management to August REI. From April 2022 to September 2023, online payments were made from Orbit Fab's Silicon Valley bank account to August REI, LLC, a residential mortgage loan servicing company, on behalf of Merrill in the amount of $120,908.47. Merrill also paid August REI, LLC with her USAA #3963 account in the amount of $101,054.79, which were fraudulent funds.

## Financial Investigation

21. During the investigation, an amount of $1,961,949.53 of Orbit Fab fraudulent payments were deposited into accounts owned by Merrill and her mother-in-law. In addition, Merrill directed from Orbit Fab's Silicon Valley bank account an amount of $149,818.37 of payments to be made on her behalf for her mortgage and credit card payments. According to Orbit Fab, Merrill utilized the Orbit Fab credit card to pay an amount of $215,799.82 in personal Merrill expenses paid by Orbit Fab. Approximately $2,327,567.72 of Orbit Fab's money has been identified as having been utilized by Merrill for personal purposes. The fraudulent funds have been traced to various purchases by Merrill.

**USAA Bank Account #3963, CD Accounts #2904 and X2964 ("USAA #3963", "USAA #2904", "USAA #2964")**

22. The USAA #3963 account was opened on or around July 26, 2021, with Merrill and her husband as the signors on the account.

23. From July 2021 through January 2025, this account received deposits totaling approximately $2,267,402.12. Approximately $1,777,182.56 of these deposits were fraudulent transactions from Orbit Fab as deposits or ACH payments. The remaining approximately $490,219.60 was comprised of payroll deposits, Zelle credits and other

miscellaneous deposits. In addition, this account had approximately $2,238,499.39 in total expenditures, which included such things as vehicle payments (to include below referenced vehicles), credit card payments, travel payments, etc.

24. As of January 23, 2025, the current balance of USAA #3963 was $28,902.73.

25. There is probable cause to believe that over $1,777,182.56 in wire fraud proceeds were deposited into USAA #3963.

26. On December 2, 2022, a wire from Orbit Fab for $24,320.00 was sent to Merrill's USAA #3963 account. On December 5, 2022, two CD's (Certificate of Deposits) were purchased from the USAA #3693 account for $5,000.00 each, CD account #2904 and CD account #2964.

27. In light of the above, there is probable cause to believe that CD account #2904 and CD account #2964 were purchased with fraud proceeds.

**Defendant Real Property Located at 19107 Sandy Sloth Trail, Cypress, TX 77433 ("19107 Sandy Sloth Trail")**

28. On April 16, 2020, defendant 19107 Sandy Sloth Trail's Deed of Trust – Wraparounds was made effective between Emily K. Merrill, joined by her spouse, Kenneth Merrill, Grantor, and Bret A. Schulte, Trustee, and 19107 Sandy Sloth Trust, a trust formed in Texas on March 1, 2020, Beneficiary, for $485,999.10 to be paid in equal monthly installments of $4,051.13.

29. As mentioned above, Merrill's ACH payments were made from accounts containing fraudulent proceeds from Orbit Fab. The following chart shows the mortgage payments that were made by Merrill for defendant 19107 Sandy Sloth Trail with fraudulent

proceeds. Orbit Fab SVB 4441 is an Orbit Fab Silicon Valley Bank account. E. Merrill USAA is the USAA #3963 account.

| Acct # | Posting Date | Description | Withdrawal |
|---|---|---|---|
| Orbit Fab SVB 4441 | 2/3/2022 | Castle Management ACH Pmt - Emily Merill | $ 18,515.81 |
| Orbit Fab SVB 4441 | 4/5/2022 | August REI LLC | $ 5,891.00 |
| Orbit Fab SVB 4441 | 5/12/2022 | August REI LLC | $ 6,744.06 |
| Orbit Fab SVB 4441 | 7/5/2022 | August REI LLC | $ 13,164.02 |
| Orbit Fab SVB 4441 | 7/21/2022 | August REI LLC | $ 6,419.96 |
| Orbit Fab SVB 4441 | 9/1/2022 | August REI LLC | $ 8,373.47 |
| Orbit Fab SVB 4441 | 10/21/2022 | August REI LLC | $ 13,001.97 |
| Orbit Fab SVB 4441 | 12/27/2022 | August REI LLC | $ 13,001.97 |
| Orbit Fab SVB 4441 | 1/26/2023 | August REI LLC | $ 6,419.96 |
| Orbit Fab SVB 4441 | 3/28/2023 | August REI LLC | $ 13,001.97 |
| Orbit Fab SVB 4441 | 5/5/2023 | August REI LLC | $ 11,630.13 |
| Orbit Fab SVB 4441 | 7/17/2023 | August REI LLC | $ 11,630.13 |
| Orbit Fab SVB 4441 | 9/5/2023 | August REI LLC | $ 11,630.13 |
| E. Merrill USAA 3973 | 11/8/2023 | August REI LLC | $ 11,630.13 |
| E. Merrill USAA 3972 | 1/2/2024 | August REI LLC | $ 5,734.04 |
| E. Merrill USAA 3971 | 1/9/2024 | August REI LLC | $ 5,869.06 |
| E. Merrill USAA 3970 | 4/4/2024 | August REI LLC (August Real Estate Investments LLC) | $ 12,000.18 |
| E. Merrill USAA 3969 | 5/1/2024 | August REI LLC | $ 5,803.92 |
| E. Merrill USAA 3968 | 5/31/2024 | August REI LLC | $ 5,803.92 |
| E. Merrill USAA 3967 | 7/16/2024 | August REI LLC | $ 5,803.92 |
| E. Merrill USAA 3966 | 7/25/2024 | August REI LLC | $ 5,835.81 |
| E. Merrill USAA 3965 | 8/26/2024 | August REI LLC | $ 5,803.92 |
| E. Merrill USAA 3964 | 10/21/2024 | August REI LLC | $ 11,769.89 |
| E. Merrill USAA 3963 | 11/5/2024 | August REI LLC | $ 25,000.00 |
| | | **TOTAL** | **$ 240,479.37** |

| | | Summary - Mortgage Payments | |
|---|---|---|---|
| | Orbit Fab Paid | Castle Management Services | $ 18,515.81 |
| | Orbit Fab Paid | August REI LLC | $ 120,908.77 |
| | E. Merrill Paid | August REI LLC | $ 101,054.79 |
| | | **Fraudulent Mortgage Payments** | **$ 240,479.37** |

9

## **CONCLUSION**

30. Based on the facts and circumstances described above, evidence shows that the defendant asset was derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 and 1957, or involved in, violations of wire fraud and money laundering.

### CERTIFICATION OF KELLY SUESS, SPECIAL AGENT
### FEDERAL BUREAU OF INVESTIGATIONS

I, Special Agent Kelly Suess, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

s/ *Kelly Suess*
Kelly Suess
Special Agent – FBI

## FIRST CLAIM FOR RELIEF

1. The Plaintiff repeats and incorporates by reference the paragraphs above.

2. By the foregoing and other acts, defendant real property located at 19107 Sandy Sloth Trail, Cypress, TX 77433, constitutes or was derived from proceeds traceable to violation of 18 U.S.C. §§ 1343 and 1957, and therefore is forfeitable pursuant to 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C) and (b).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the Defendant property in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 7th day of August 2025.

Respectfully submitted,

PETER MCNEILLY
United States Attorney

By: s/*Zachary Phillips*
Zachary Phillips
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Ste. 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0405
E-mail: zachary.phillips@usdoj.gov
*Attorney for the United States*